# 23-7593-cv

## United States Court of Appeals
### *for the*
## Second Circuit

---

SHENZHEN LANTENG CYBER TECHNOLOGY CO., LTD.,

*Petitioner-Appellant,*

— v. —

AMAZON.COM SERVICES, LLC, A Delaware Limited Liability Company,
AMAZON.COM, INC., A Delaware Corporation,

*Respondents-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR RESPONDENTS-APPELLEES

JOHN M. MAGLIERY
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
(212) 489-8230

JOHN GOLDMARK
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
(206) 622-3150

*Attorneys for Respondents-Appellees*

CP COUNSEL PRESS    (800) 4-APPEAL • (329556)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Respondent-Appellee Amazon.com, Inc., states that it is a publicly traded company, and it has no parent corporation, and no other publicly held corporation owns 10% or more of its stock.

Respondent-Appellee Amazon.com Services LLC is a wholly owned indirect subsidiary of parent company Amazon.com, Inc.  No other publicly held corporation owns 10% or more of the membership interests of Amazon.com Services LLC.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ...........................................................1

JURISDICTIONAL STATEMENT ......................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................5

COUNTERSTATEMENT OF THE CASE.............................................5

    I.    Statement of Facts ................................................................5

        A.    The Parties and Their Governing Contract .................5

        B.    The Underlying Dispute........................................9

        C.    The Arbitration Proceedings ..................................10

        D.    The Arbitration Award.........................................12

    II.    Procedural History...............................................15

    III.    Rulings Presented for Review .............................22

SUMMARY OF ARGUMENT .................................................24

STANDARD OF REVIEW ....................................................24

ARGUMENT ...................................................................26

    I.    The District Court Correctly Held That the Award Should Not Be Vacated, but Rather Confirmed, Because the Arbitrator Did Not Manifestly Disregard the Law........................................26

    II.    The District Court Correctly Held That the Award Should Not Be Vacated, but Rather Confirmed, Because Lanteng Failed to Establish That Public Policy Would Justify Vacating the Arbitration Award. ...............................................32

    III.    Lanteng's Brief Fails to Comply With the Rules................34

CONCLUSION ................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alharbi v. Beck*,
    62 F. Supp. 3d 202 (D. Mass. 2014)............................................................36, 37

*Atl. States Legal Found., Inc. v. Whitman*,
    14 F. App'x 76 (2d Cir. 2001) ...............................................................34

*Banco de Seguros del Estado v. Mut. Marine Off., Inc.*,
    344 F.3d 255 (2d Cir. 2003) ...............................................................28, 29, 31

*Bogar v. Ameriprise Fin. Servs., Inc.*,
    No. 1:16-CV-7199-GHW, 2017 WL 1745566 (S.D.N.Y. May 4, 2017)...........22

*Clark v. John Lamula Investors, Inc.*,
    583 F.2d 594 (2d Cir. 1978) ...............................................................35

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) ...............................................................26

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
    156 F.3d 310 (2d Cir. 1998) ...............................................................21, 33, 34

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995)...............................................................25

*Fisher v. Kanas*,
    487 F. Supp. 2d 270 (E.D.N.Y. 2007), *aff'd*, 288 F. App'x 721
    (2d Cir. 2008) ...............................................................20, 32

*Hall St. Assocs. v. Mattel, Inc.*,
    552 U.S. 576 (2008)...............................................................26

*In re Potential Dynamix LLC*,
    No. 2:11-BK-28944-DPC, 2022 WL 18635242 (Bankr. D. Ariz.
    July 18, 2022) ...............................................................34

*Int'l Bus. Machs. Corp. v. Edelstein*,
526 F.2d 37 (2d Cir. 1975) (per curiam) ............................................................36

*Jiakeshu Tech. Ltd. v. Amazon.com Servs., LLC*,
No. 22-CV-10119, 2024 WL 36999 (S.D.N.Y. Jan. 3, 2024)............................30

*Jock v. Sterling Jewelers Inc.*,
646 F.3d 113 (2d Cir. 2011) ............................................................18, 19, 20, 32

*Kaspersky Lab, Inc. v. Dep't of Homeland Sec.*,
909 F.3d 446 (D.C. Cir. 2018)............................................................................36

*Knipe v. Skinner*,
999 F.2d 708 (2d Cir. 1993) ..............................................................................20, 32

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
729 F.3d 99 (2d Cir. 2013) ................................................................................24, 26

*L'Objet, LLC v. Limited*,
No. 11 CIV. 3856 LBS, 2011 WL 4528297 (S.D.N.Y. Sept. 29, 2011)...........22

*Norton v. Sam's Club*,
145 F.3d 114 (2d Cir. 1998) ................................................................23, 31, 33

*Olin Holdings Ltd. v. Libya*,
73 F.4th 92 (2d Cir. 2023) .................................................................................22

*Oxford Health Plans LLC v. Sutter*,
569 U.S. 564 (2013)............................................................................................25

*Pacelli v. Vane Line Bunkering, Inc.*,
549 F. Supp. 3d 306 (S.D.N.Y. 2021) ...............................................................26

*PB Life & Annuity Co. v. Universal Life Ins. Co.*,
No. 20-CV-2284 (LJL), 2020 WL 4369443 (S.D.N.Y. July 30, 2020) .............33

*Rich v. Spartis*,
516 F.3d 75 (2d Cir. 2008) .................................................................................26

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007) ...............................................................................36

*Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*,
    668 F.3d 60 (2d Cir. 2012) ........................................................3, 24, 26

*Schwartz v. Merrill Lynch & Co.*,
    665 F.3d 444 (2d Cir. 2011) .................................................................25

*Seneca Nation of Indians v. New York*,
    988 F.3d 618 (2d Cir. 2021) .................................................................25

*Shenzhen Zongheng Domain Network Co. v. Amazon.com Servs. LLC*,
    No. 23-CV-03334 (JLR), 2023 WL 7327140 (S.D.N.Y. Nov. 7, 2023)......30, 31

*Stasiukevich v. Nicolls*,
    168 F.2d 474 (1st Cir. 1948).................................................................37

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)........................................................................28, 29

*Tchatat v. City of N.Y.*,
    795 F. App'x 34 (2d Cir. 2019) ...........................................................35

*Tempo Shain Corp. v. Bertek, Inc.*,
    120 F.3d 16 (2d Cir.1997) ...................................................................26

*United States v. Bleznak*,
    153 F.3d 16 (2d Cir. 1998) ...................................................................37

*US Rising Star Inc. v. Amazon.com Servs., LLC*,
    No. 23 CIV 778 (CM), 2023 WL 6882337 (S.D.N.Y. Oct. 18, 2023)........*passim*

*W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork,*
    *Linoleum & Plastic Workers of Am.*,
    461 U.S. 757 (1983)............................................................................34

*Wallace v. Buttar*,
    378 F.3d 182 (2d Cir. 2004) ..........................................................*passim*

*Westerbeke Corp. v. Daihatsu Motor Corp.*,
    304 F.3d 200 (2d Cir. 2002) .................................................................27

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,
    103 F.3d 9 (2d Cir. 1997) .....................................................................31

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
126 F.3d 15 (2d Cir. 1997) .............................................................4, 24, 25

*Zurich Am. Ins. Co. v. Team Tankers A.S.*,
811 F.3d 584 (2d Cir. 2016) ........................................................24, 25, 27, 30

**State Cases**

*Nelson v. McGoldrick*,
127 Wash. 2d 124, 896 P.2d 1258 (Wash. 1995) ........................................12, 13

*Schroeder v. Fageol Motors, Inc.*,
86 Wash. 2d 256, 544 P.2d 20 (Wash. 1975) ......................................................13

*Watson v. Ingram*,
124 Wash. 2d 845, 881 P.2d 247 (Wash. 1994) ........................................*passim*

**Federal Statutes**

9 U.S.C. § 10(a) ...........................................................................................25, 26

9 U.S.C. § 207 .....................................................................................................25

28 U.S.C. § 1332(a) .........................................................................................3, 4

28 U.S.C. § 1291 ..................................................................................................5

**Rules**

Fed. R. App. P. 10(a) ........................................................................................36

Fed. R. App. P. 28(a)(8)(A) .............................................................................35

Appellees-Respondents Amazon.com Services LLC and Amazon.com, Inc. (collectively, "Amazon") submit this Brief in response to the Brief submitted by Appellant-Petitioner Shenzhen Lanteng Cyber Technology Co., Ltd. ("Lanteng").

## PRELIMINARY STATEMENT

The Court should deny Lanteng's appeal and affirm District Court Judge Gregory H. Woods' September 26, 2023, Memorandum and Opinion Order ("Opinion"). This appeal is Lanteng's third attempt to litigate issues that were properly and fully decided in an arbitration proceeding; the Opinion properly found that Lanteng cannot come close to meeting the high bar to vacate the properly made Arbitration Award, which the Opinion confirmed.

Lanteng previously operated as a third-party seller in the Amazon.com store. In exchange for that privilege, and to ensure customer trust—the heart of Amazon's business—Lanteng promised it would operate fairly, honestly, and transparently. But Lanteng abused that trust. As Arbitrator John A. Bonello found, Lanteng engaged in deceptive conduct and breached its contractual promises to Amazon. In particular, the Arbitrator found that Lanteng "manipulated customer feedback by bribing customers in exchange for falsified positive reviews and removal of honest negative ones," and also failed to verify the identity of its owner/operator, as required by Amazon's anti-fraud controls. As a result, the Arbitrator held that Amazon was "well within its contractual rights" to terminate

1

Lanteng's seller account and withhold further payments, as expressly authorized by the parties' governing contract.

Lanteng subsequently filed a petition seeking to vacate the Award, contending that the Arbitrator exceeded his authority, that his Award reflects a manifest disregard of the law, and that the Award was completely irrational. As the District Court's meticulously reasoned Opinion explains, Lanteng's arguments "boil down to a contention that the Arbitrator did not '[get] it right'—but such an error, even if one existed, would not justify vacatur of the award." SPA-16. Nevertheless, Lanteng repeats those same fallacious arguments to this Court, each of which fails.

First, Lanteng's contention that the Arbitrator's Award reflects manifest errors of law is utterly without merit. Lanteng ignores the binding Second Circuit authority cited by the District Court that establishes beyond controversy that vacatur is not a vehicle through which losing parties can simply relitigate the merits of an arbitrator's decision—which is precisely what Lanteng improperly seeks to do here.

Second, Lanteng's argument that public policy precludes enforcement of the Arbitrator's Award fails as a matter of law because, as the District Court explained, Lanteng raised this argument for the first time in reply. And, in any event, Lanteng

fails to establish any element of this narrow exception to a duly issued arbitration award's presumptive enforceability.

Because Lanteng cannot establish any ground for vacatur, the District Court's decision should be affirmed, in accordance with the Federal Arbitration Act ("FAA") and governing federal law.

## JURISDICTIONAL STATEMENT

As Lanteng concedes, the District Court had jurisdiction under 9 U.S.C. § 203 because this action falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"). Appellant Brief ("App. Br.) at 1. However, Lanteng fails to note that the District Court also had diversity jurisdiction under 28 U.S.C. § 1332(a)(2) because this action involves citizens of a State (Amazon) and citizens or subjects of a foreign state (Lanteng) and the amount in controversy exceeds $75,000.

As to federal question jurisdiction, 9 U.S.C. § 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (noting that 9 U.S.C. § 203 "provides federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the Convention"). The Convention applies to "awards not considered as domestic awards in the State where their recognition and

enforcement are sought." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 18 (2d Cir. 1997) (quoting Convention art. I(1)).

The Second Circuit defines nondomestic awards to include an award made in the United States and decided under the laws of the United States but which "involves . . . entities that are not U.S. citizens." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 73 (2d Cir. 2017); *see also Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19 ("[A]wards 'not considered as domestic' denotes awards which are subject to the Convention not because [they] . . . involv[e] parties domiciled or having their principal place of business outside the enforcing jurisdiction.") (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983)).

As Lanteng notes, it is a Chinese company with a principal place of business in China. App. Br. at 1. Therefore, the Convention governs this case. *See Scandinavian*, 668 F.3d at 71 ("The New York Convention applies in this case because Scandinavian is a foreign corporation.") (citing 9 U.S.C. § 202).

As to diversity jurisdiction, 28 U.S.C. § 1332(a)(2) provides in part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- . . . (2) citizens of a State and citizens or subjects of a foreign state . . . ." Here, Amazon is a citizen of the State of Washington, and

4

Lanteng is a citizen of a foreign state—China.  As a result, there is complete diversity.  The amount in controversy exceeds $75,000.  Therefore, diversity jurisdiction permitted the District Court to hear this case as well.

Finally, this Court has jurisdiction under 28 U.S.C. § 1291 because the District Court's Opinion is a final, appealable decision.  *See, e.g.*, *Synergy Gas Co. v. Sasso*, 853 F.2d 59, 62 (2d Cir. 1988) ("[T]he court's order confirming the arbitration award is final and appealable.").

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

- Did the District Court err in holding that the Arbitration Award should not be vacated, but rather confirmed, because the Arbitrator did not manifestly disregard the law?

- Did the District Court err in holding that the Arbitration Award should not be vacated, but rather confirmed, because the terms of the BSA did not violate any public policy that would justify vacating the Arbitration Award?

## COUNTERSTATEMENT OF THE CASE

**I.    Statement of Facts**

**A.    The Parties and Their Governing Contract**

Amazon owns and operates the Amazon online stores.  APP-9.  Lanteng is a company based in China that previously operated as a third-party seller in the Amazon.com store until June 24, 2021, when Amazon terminated its account

because Lanteng was manipulating customer reviews of its products in Amazon's store.  *See* APP-9, APP-15, APP-17.

Amazon works hard to maintain the integrity of its stores and brand which depend on customer trust.  APP-308.  Amazon permits third parties (such as Lanteng) to sell products in the Amazon.com store to enhance its customers' experience, which in turn provides those third-party sellers with access to the millions of customers shopping in the Amazon.com store.  *Id.*  As a precondition to this access, Amazon requires all third-party sellers to agree to the terms and conditions set forth in the Business Solutions Agreement ("BSA") and incorporated policies, which set forth clear rules to protect the Amazon.com store and customer trust.  APP-308, APP-331-77 ("BSA"); *accord* SPA-1 (finding, "To sell on Amazon's online marketplace, Lanteng had to agree to Amazon's 'Business Solutions Agreement' (the 'BSA').") (citations omitted).

Amazon requires honesty in all respects from its third-party sellers, in addition to honesty and integrity in the reviews that customers leave for products. APP-308-09.  To that end, the BSA incorporates Amazon's Customer Product Reviews Policies, which prohibits sellers from, among other things, offering "a third party a financial reward, discount, free products, or other compensation in exchange for a review on their product or their competitor's product."  APP-380-

6

81; *accord* SPA-2 (finding, "Third-party sellers like Lanteng are also subject to Amazon's 'customer product reviews policies.'").

Amazon also requires sellers to be honest about the true identity of the party operating the account so that Amazon knows who is gaining access to its store and customers. APP-309. This helps Amazon prevent bad actors from circumventing their seller account's termination by seeking to operate another seller account under somebody else's name. APP-309-311. Accordingly, under the BSA, sellers like Lanteng agree to "act fairly and honestly on Amazon to ensure a safe buying and selling experience" and "at all times" provide only "accurate, complete, and valid" information to Amazon and its customers. APP-309, APP 334 § 2.

And, given the paramount importance of verifying the identities of sellers with whom Amazon provides access to its customers, the BSA also provides that Amazon "may at any time require you to provide any financial, business or personal information we request *to verify your identity*." APP-371 § P-4 (emphasis added); *accord* SPA-2 (finding, "[t]he BSA also requires sellers to verify their identity at Amazon's request.") (citing BSA § P-4).

Under the BSA, sellers like Lanteng remain eligible for disbursement of sales proceeds on the condition that they refrain from certain deceptive conduct detrimental to the integrity of Amazon's stores. APP-334 § 2. However, in the event a seller breaches the BSA, Amazon may terminate the seller's account.

7

APP-335-36 § 3; *accord* SPA-2 (finding, "Section 3 of the BSA grants Amazon authority to block the account of a seller that engages in fraudulent activity[.]"). (citing BSA § 3).

Section 2 of the BSA further provides: "If we determine that your account . . . has been used to engage in *deceptive, fraudulent, or illegal activity . . . or to repeatedly violate our Program Policies, then we may in our sole discretion permanently withhold any payments to you*." APP-334-35 § 2 ((emphasis added); *accord* SPA-2 (finding, "Section 2 of the BSA permits Amazon to withhold payments to sellers who engage in fraud[.]") (citing BSA § 2). Thus, by entering into the BSA, sellers like Lanteng acknowledge and agree that they are not entitled to further disbursement if they engage in deceptive, fraudulent, or illegal activity, or repeatedly violate Amazon's policies. APP-334-35 § 2. This provides a crucial safeguard against deceptive and fraudulent seller conduct in Amazon's stores. APP-310.

Section 18 of the BSA sets forth an arbitration provision that states, in relevant part, the following:

> Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court. . . . The arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules.

8

APP-342-43 § 18; *accord* SPA-3 (finding "[t]he BSA requires that the parties resolve any dispute relating in any way to the BSA or Amazon's services through arbitration.") (citing BSA § 18). The BSA also specifies that it is governed by "the Laws of the State of Washington, United States together with the Federal Arbitration Act." APP-346 § 18; *accord* SPA-3.

## B. The Underlying Dispute

Amazon blocked Lanteng's seller account in September 2021, after it identified multiple indicators of reviews abuse. APP-327 ¶ 10. Lanteng then submitted an appeal to Amazon in which Lanteng admitted to manipulating customers' feedback by offering them bribes in exchange for falsified positive reviews and the removal of honest negative ones. *Id.* APP-385-87 (Lanteng admitting to Amazon, "As a professional seller on Amazon, we should have not asked or lead [*sic*] customers to provide us reviews and provide compensation. We already realized our mistake, and we learned Amazon selling policy, we will comply with it during future selling, please kindly give us a chance to sell on Amazon again.").

In light of Lanteng's admitted deceptive conduct—and as part of Amazon's anti-fraud controls— Amazon requested that Lanteng complete a virtual "in person identity verification interview" to confirm the identity of the seller account's holder/operator. APP-328-29 ¶ 14. Lanteng's supposed owner, an individual

9

named Jiaoyu Cheng, appeared for the interview on Lanteng's behalf but could not

answer even basic questions about her purported business, revealing she was acting

as a front for the true operators, and thus failed the verification.  APP-329 ¶ 16.

Amazon ultimately suspended Lanteng's seller account and concluded it was not

eligible for disbursement of the funds then pending in the seller account, totaling

$123,622.24.  APP-328 ¶ 13.  This represented approximately two weeks' worth of

funds awaiting disbursement.  *Id.*; *accord* SPA-4 (noting same).

### C.    The Arbitration Proceedings

On January 16, 2022, Lanteng filed with the AAA its Demand for

Arbitration and Request for Emergency Relief, captioned *Shenzhen Lanteng Cyber*

*Technology Co. v. Amazon.com Services LLC, et al.*, No. 01-22-0000-2374

("Arbitration").  APP-389-415.  In its Demand, Lanteng alleged that "Amazon

improperly deactivated" its seller account and was "withholding [Lanteng's] sales

proceeds" and asserted four Washington law claims: (1) breach of contract and/or

the implied duty of good faith; (2) "for a declaratory judgment that section 2 of the

BSA is an unenforceable penalty clause"; (3) conversion; and (4) "violation of

bailment."  APP-389-90 ¶ 2, APP-405-08 ¶¶ 61-96.

On April 19, 2022, the AAA appointed attorney John A. Bonello as the

parties' arbitrator ("Arbitrator").  APP-418-23.  The Arbitrator issued his

Scheduling Order on May 19, 2022, which states, among other things, that

"[Lanteng] chose to have this arbitration based on written submissions" in lieu of an evidentiary hearing.  APP-424-26 ¶ 1 ("Scheduling Order").  The Scheduling Order also established a briefing schedule under which each party was to submit opening and reply briefs to the Arbitrator for his merits determination.  *Id.* ¶ 6.

The parties subsequently submitted their opening briefs which were accompanied by both declarations and documentary exhibits.  *See generally* APP-305-87, APP-428-50.  Lanteng's brief argued that: (1) section 2 of the BSA is procedurally and substantively unconscionable; (2) section 2 of the BSA is an unenforceable penalty clause, rather than a liquidated damages clause; and (3) Amazon breached the BSA "by failing to disburse [Lanteng's] sales proceeds." APP-428-50.

Conversely, Amazon argued that Lanteng's claims failed because Lanteng (not Amazon) breached the BSA, including by (a) manipulating its customer product reviews by bribing customers to leave positive reviews or remove negative ones (referred to as "reviews abuse"), and (b) providing false information about the Lanteng Amazon seller's account's true operators.  APP-315-16.  Amazon further argued that under Washington law, Section 2 of the BSA is an enforceable liquidated damages clause and that Lanteng could not establish that the BSA was either substantively or procedurally unconscionable.  APP-319-322.

11

The parties concluded their merits cases in the Arbitration on September 2, 2022, when they submitted their respective briefs in reply to the Arbitrator.  APP-451-62, APP-463-78.  Pursuant to Lanteng's election of a papers-only (desk) arbitration proceeding, the Arbitrator determined the arbitration case's merits based on the parties' briefs and supporting evidence.  *See* APP-424-26, APP-479-82.

### D.     The Arbitration Award

On October 7, 2022, the Arbitrator issued his Award of Arbitrator ("Award") in Reston, Virginia, in which he analyzed and then denied each of Lanteng's claims against Amazon.  APP-479-82.  As the District Court noted, "[t]he Arbitrator began by addressing the arguments presented by Lanteng regarding the enforceability of the BSA."  SPA-47.

First, the Award addressed and rejected Lanteng's procedural unconscionability argument.  APP-480 (citing *Nelson v. McGoldrick*, 127 Wash. 2d 124, 131, 896 P.2d 1258, 1262 (Wash. 1995)).  As the District Court explained, the Arbitrator "cited to an *en banc* decision by the Supreme Court of Washington State and, based on it, defined procedural unconscionability as a 'lack of meaningful choice, considering all the circumstances surrounding the transaction including the manner in which the contract was entered into.'"  SPA-5 (quoting APP-480 (citing *Nelson*, 96 P.2d at 1262)).  As the Award also reflects, "The

12

Arbitrator evaluated the facts presented to him in the hearing and found that Lanteng 'made a choice to enter into the BSA knowing the terms and condition[s] [*sic*] and could have decided not to sell on [Amazon's] platform,'" and "determined, therefore, that '[t]he facts do not support a finding of procedural unconscionability with respect to the BSA.'" SPA-5-6 (quoting APP-480).

Second, the Arbitrator's Award analyzed and rejected Lanteng's substantive unconscionability argument regarding the BSA. APP-480 (quoting *Schroeder v. Fageol Motors, Inc.*, 86 Wash. 2d 256, 260, 544 P.2d 20, 23 (Wash. 1975)). And, as the Court below noted, the Arbitrator "cited to another *en banc* decision of the Supreme Court of Washington State, which held that '[s]ubstantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh,'" and "ruled that that there was 'nothing one-sided or overly harsh with' Amazon 'conditioning disbursements of funds' on Lanteng's compliance with Amazons' [*sic*] seller policies regarding non-deceptive behavior." SPA-6 (quoting APP-480).

Third, the Arbitrator's Award reviewed and rejected Lanteng's contention that "section 2 of the BSA is an unenforceable penalty clause" as opposed to an enforceable liquidated damages provision. APP-481. As the District Court observed, "With respect to this issue too, the Arbitrator's Award specifically cited to an *en banc* opinion by the Supreme Court of Washington State [i.e., *Watson v.*

13

*Ingram*, 124 Wash. 2d 845, 850, 881 P.2d 247, 249 (Wash. 1994)]" to support its

conclusion "that Washington law 'favors liquidated damages provisions' and that

'courts routinely uphold' such awards 'where (1) the amount is a reasonable

forecast of just compensation for the harm that is caused by the breach,' and (2) the

harm is 'incapable or very difficult of ascertainment.'" SPA-6 (quoting APP-481).

As the District Court further noted, the Arbitrator "determined that Section 2 of the

BSA did not constitute an unenforceable penalty clause" in light of the Arbitrator's

related findings that "the BSA's terms were 'a reasonable forecast of the harm

caused by a breach of the BSA at the time the parties entered into the BSA' and

that the harm caused by a breach of the BSA 'was not capable of being assessed at

the time the parties entered into the BSA.'" SPA-6-7 (quoting APP-481).

Finally, the Arbitrator held that Amazon was justified in withholding

Lanteng's funds under the Section 2 of the BSA. APP-481. The District Court

provided a detailed summary of the Arbitrator's related findings:

> [The Arbitrator] found that Section 2 of the BSA
> authorized Amazon to withhold Lanteng's funds if
> Lanteng engaged in deceptive, fraudulent, or illegal
> activity or violated program policies that are incorporated
> in the BSA. He further found that the BSA and the
> program policies it incorporated prohibited sellers from
> offering compensation in exchange for reviews and
> requires sellers to verify their identity upon Amazon's
> request.
>
> The Arbitrator then reviewed the facts, including the fact
> that Lanteng 'admitted ... that it manipulated customer

14

> feedback by bribing customers in exchange for falsified positive reviews and removal of honest negative ones,' and found that Lanteng had violated Amazon's customer review policies. He also reviewed the facts concerning Amazon's request for Lanteng to verify its identity, finding that Lanteng failed to verify its identity as required under the BSA. He determined that Lanteng's violations of these policies placed Amazon 'well within its contractual rights to withhold [Lanteng's] funds.' As a result, the Arbitrator denied Lanteng's claim for breach of contract and its remaining claims.

SPA-7 (quoting APP-481-82) (internal citations omitted).

## II. Procedural History

On January 7, 2023, Lanteng filed its Petition to Vacate the Award in the Supreme Court of the State of New York, County of New York, which Amazon removed to Southern District of New York on February 6, 2023. SPA-7 (docket citations omitted).

On April 12, 2023, Lanteng filed its Motion to Vacate Arbitration Award, memorandum of law, and supporting papers. SPA-8. Lanteng's papers cited New York state law (instead of federal law) even though the District Court had previously granted Lanteng leave "to submit a revised brief supported by appropriate references to the federal law that would govern the Court's evaluation of the application." SPA-7-8 & n.3 ("The Court does not know why Lanteng did not revise its brief to address the federal legal standard notwithstanding the Court's extension of an opportunity for it to do so."). In any event, Amazon filed its

opposition to Lanteng's Petition as well as its Cross-Petition to Confirm the Award on May 10, 2023, which was followed by Lanteng's reply on May 19, 2023, and Amazon's sur-reply on June 5, 2023.  SPA-8.

Lanteng's moving papers "challenge[d] the Award by arguing that the Arbitrator acted in manifest disregard of the law and that he exceeded his authority" in addition to an argument raised for the first time in its reply that "the Award should be vacated because the BSA violates the public policy of the State of Washington."  SPA-12.  On September 26, 2023, the District Court entered its Opinion denying Lanteng's Petition, granting Amazon's Cross-Petition, and holding, "Lanteng has not met its burden to show that vacatur is appropriate" on any of the grounds it raised.  *Id.*

The District Court's first substantive (i.e., non-jurisdictional) ruling was that "Lanteng has not shown that the Arbitrator acted in manifest disregard of the law." SPA-13.  The Opinion recited the exacting legal standard confronting Lanteng, requiring it to demonstrate "both that (1) the arbitrator[] knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator[] was well defined, explicit, and clearly applicable to the case."  *Id.* (quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)); *see also id.* ("Even if a court disagrees with the arbitrator's decision on the merits, 'if there is a *barely*

16

*colorable justification* for the outcome,' then the award should be enforced.")

(quoting *Wallace*, 378 F.3d at 190).

The Opinion also summarized Lanteng's arguments on this vacatur theory:

> In support of its request to vacate the Award based on its assertion that the Arbitrator acted in manifest disregard of the law, Lanteng reiterates the arguments that it pursued before the Arbitrator: Lanteng argues that Section 2 of the BSA is unenforceable under Washington state law because it is procedurally unconscionable, substantively unconscionable, and constitutes an unenforceable penalty clause.

SPA-13-14 (record citations omitted).

After reviewing the record recited above, the District Court concluded, "[t]he Arbitrator did not agree with the position advocated by Lanteng, but it cannot reasonably be claimed that he ignored governing law." SPA-13. The Court reasoned, "Lanteng's argument that the BSA was unenforceable was thoroughly briefed to the Arbitrator. The Arbitrator responded to each argument in his Award. In doing so, he pointed to precedential opinions issued by the Supreme Court of Washington State." *Id.*; *see also* SPA-14 ("[T]he Arbitrator addressed each of these arguments in turn.").

The District Court further explained that as a matter of binding federal precedent, "[e]ven if this Court disagreed with the Arbitrator's analysis, that would not provide a basis to vacate the Award. The Court does not sit as a court of appeal with respect to the Arbitrator's legal conclusions. . . . [T]he doctrine gives

17

extreme deference to arbitrators."  SPA-14 (citing *Wallace*, 378 F.3d at 189, 190) (internal citations and quotations omitted).[1]  The District Court concluded, "Lanteng has not shown that the arbitrator was aware of but ignored a clearly applicable governing legal principle." *Id.*

The District Court's second substantive ruling was that "Lanteng's argument that the Arbitrator exceeded his authority has no merit." *Id.*  Its Opinion explained that under binding Second Circuit authority, "The focus of the inquiry in challenges to an arbitration award under [this basis] is 'whether the arbitrator[ ] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrators correctly decided that issue*.'" *Id.* (quoting *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011)); *see also id.* ("The Court will 'uphold an award so long as the arbitrator offers a barely colorable justification for the outcome reached.'") (quoting *Jock*, 646 F.3d at 122).

Nevertheless, Lanteng's arguments below "boil[ed] down to a contention that the Arbitrator did not '[get] it right'" rather than addressing the scope of the Arbitrator's authority under the BSA.  *See* SPA-16 (quoting *Jock*, 646 F.3d at 124).

---

[1] The District Court summarily disposed of Lanteng's citations to "arbitration awards that have reached a different conclusion than the Arbitrator regarding the enforceability of Section 2 of the BSA," noting, "the fact that other arbitrators ruled differently does not justify vacatur of the Award."  SPA-14.

Therefore, the District Court held that "the arbitrator was acting within his authority when he issued the Award," reasoning as follows:

> There is no dispute that the Arbitrator had the power under the arbitration agreement to reach the issues decided in the Award. The BSA's arbitration provision [i.e., Section 18] was broad in scope. It unambiguously vested the Arbitrator with broad authority to resolve any dispute "relating in any way" to the BSA. . . .

> Nor can there be any dispute that the issues resolved in the Award were submitted to the Arbitrator for decision. Lanteng initiated the arbitration for the express purpose of obtaining a ruling regarding what it described as Amazon's "wholly unjustified indefinite withholding of sales proceeds . . . ." And, as described above, the parties fully briefed issues related to Amazon's authority to seize the funds under the BSA and the enforceability of the BSA.

SPA-15 (internal citations omitted).

Applying Second Circuit precedent, the District Court also addressed and rejected Lanteng's argument that "the Arbitrator did not '[get] it right'" on the substantive merits of his Award:

> The Arbitrator also had a colorable justification under Washington law to rule as he did. He reviewed the factual record presented to him by the parties. He evaluated the text of the BSA and relevant precedent. He had more than a colorable basis to conclude that the text of the BSA permitted Amazon to withhold funds from Lanteng. . . . The Arbitrator evaluated binding precedent by the Supreme Court of the State of Washington to reach the conclusion that the BSA was enforceable. Therefore, the Arbitrator had more than a colorable justification to issue the Award.

19

SPA-14 (quoting *Jock*, 646 F.3d at 122); SPA-16.

The District Court aptly concluded:

> It is not this Court's role to determine whether the Arbitrator made the right decision, but simply whether the decision was within the scope of his power. The issue of Amazon's retention of Lanteng's funds under the BSA was squarely presented to the Arbitrator, and Lanteng has not shown that the parties' arbitration agreement or the law prohibited the Arbitrator from deciding that issue. Lanteng's arguments that the Arbitrator ruled incorrectly are misplaced and do not suffice to vacate the Award.

SPA-16-17 (citing *Jock*, 646 F.3d at 124).

In the District Court's third substantive ruling, it reviewed and rejected on multiple grounds Lanteng's belated argument—made "for the first time in its reply brief"—that the "award should be vacated on the grounds that the BSA violates Washington State's public policy." SPA-17. As an initial matter, the District Court ruled that "Lanteng's delay in raising this argument alone warrants its rejection." SPA-17 (citing *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993); *Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007), *aff'd*, 288 F. App'x 721 (2d Cir. 2008)). Similarly, the District Court found that Lanteng "failed to raise this issue with the Arbitrator" "in the first instance" and, as a result, "'the issue is forfeited.'" SPA-17 (quoting *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998)).

20

As to the substance of Lanteng's public policy arguments, the Opinion noted in a footnote that "Lanteng did not argue that the Award should be vacated pursuant to the public policy exception incorporated in the Convention."  SPA-18 n.6 (explaining that the Convention's "public policy exception is to be construed very narrowly and should be applied only where enforcement would violate our most basic notions of morality and justice") (quoting *Europcar*, 156 F.3d at 315).

Instead, as the District Court observed, "Lanteng's argument [was] that the BSA—*the contract*—is unenforceable under Washington State law, not that enforcement of *the award* would violate public policy."  SPA-18 n.6 (emphasis added).  Therefore, as the District Court explained, Lanteng's public policy contentions failed outright under Second Circuit precedent because "Lanteng fail[ed] to identify any explicit public policy that would be violated or to show that enforcement of *the Award* 'would violate our most basic notions of morality and justice.'"  *Id.* (quoting *Europcar*, 156 F.3d at 315) (emphasis added).

Despite the misguided nature of Lanteng's public policy theory, the District Court nevertheless addressed and rejected Lanteng's contention that a "bankruptcy court decision in the District of Arizona . . . should be applied in this case and that the Court should rule that *Section 2 is unenforceable as violative of Washington's public policy*."  SPA-15 (record citations omitted) (emphasis in original); SPA-17 ("In any event, Lanteng's argument does not justify vacatur of the Award.").  This

21

passage of the Opinion concluded: "Again, the Court does not sit as a super-court of appeals with respect to the Arbitrator's Award. As described above, the Arbitrator did not act in manifest disregard of the law." SPA-17-18.

The District Court's fourth and final substantive ruling was that "Lanteng has not shown that any of the grounds for refusal or deferral of enforcement of the Award [under the Convention] apply" and, therefore, "Amazon's motion to confirm is granted." SPA-18 (citing *Olin Holdings Ltd. v. Libya*, 73 F.4th 92, 108 (2d Cir. 2023); *Bogar v. Ameriprise Fin. Servs., Inc.*, No. 1:16-CV-7199-GHW, 2017 WL 1745566, at *4 (S.D.N.Y. May 4, 2017); *L'Objet, LLC v. Limited*, No. 11 CIV. 3856 LBS, 2011 WL 4528297, at *3 (S.D.N.Y. Sept. 29, 2011)).

Lanteng filed its Notice of Appeal on October 7, 2023. Dkt. 1.1. On February 8, 2024, this Court entered an Order pursuant to which this appeal and a virtually identical appeal filed by Lanteng's same counsel—*U.S. Rising Star Inc. v. Amazon.com, Inc., et al.*, No. 23-7809—will "be heard in tandem." Dkt. 28.1.

## III.  RULINGS PRESENTED FOR REVIEW

Lanteng's Brief presents for review by this Court only two specific rulings from the Opinion.

Lanteng first contends, "[t]he District Court erred in holding that the Arbitrator did not manifestly disregard the law [because] Section 2 of the BSA is an unenforceable penalty clause under Washington laws [*sic*], and there is no

22

colorable justification for an alternative interpretation." App. Br. at 19. Lanteng also claims, "[t]he District Court misinterpreted [Lanteng's public policy] argument and erred in holding that Petitioner's argument does not justify vacatur of the Award." *Id.* at 29.

Those are the only two issues Lanteng's Brief squarely raises for review. Lanteng's Brief does not contain any substantive argument regarding the issue of unconscionability despite the fact that the BSA's alleged unconscionability is the central thesis of that Brief's twelve-and-a-half-page Preliminary Statement. Indeed, Lanteng's Brief claims early on that "a crucial issue for the Arbitrator to decide in this case is whether Sections 2, 3 and 8 of the BSA are unconscionable"—an issue Lanteng posited "requires a determination of whether [Lanteng] had any viable or meaningful choice but to enter into the BSA to succeed in its online business." App. Br. at 8 ("Preliminary Statement, Part II").

But Lanteng abandons these contentions after its Preliminary Statement, along with its arguments below that the Arbitrator somehow exceeded his authority. *See id.* at 15-39. *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

## SUMMARY OF ARGUMENT

Lanteng fails to meet is burden of establishing either that the Arbitrator committed a manifest error of law or that the Court's enforcement of the Award would violate public policy. To the contrary, Lanteng's spurious arguments in support of these two misguided theories establish only that each of its contentions to this Court are precluded by long-settled Second Circuit authority.

## STANDARD OF REVIEW

The Court of Appeals "reviews a district court's decision to confirm or vacate an arbitration award *de novo* for questions of law" and reviews "findings of fact for clear error." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 (2d Cir. 2013) (citing *Scandinavian*, 668 F.3d at 71). While this Court's review of the District Court's Opinion is de novo, its review of the Arbitrator's Award remains "very limited." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016) (citation omitted).

Under the Convention, there are seven enumerated grounds under which a party may seek to vacate an arbitration award. *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19 (setting forth grounds for vacatur under Article V of the Convention). "[A] court must confirm an arbitral award 'unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" *Zurich Am. Ins. Co.*, 811 F.3d at 588 (quoting 9 U.S.C.

§ 207).  If the award is entered in the United States, however, "available grounds for vacatur [also] include all the express grounds for vacating an award under the FAA."  *Id.*

"Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'"  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). The FAA sets out four grounds: (1) "the award was procured by corruption, fraud, or undue means"; (2) the arbitrators showed "evident partiality or corruption"; (3) "the arbitrators were guilty of misconduct" that prejudiced "the rights of any party"; or (4) "the arbitrators exceeded their powers."  9 U.S.C. § 10(a).

Besides these four explicit bases, the Second Circuit has put a "judicial gloss on the specific grounds for vacatur of arbitration awards" in the FAA and recognized that a "court may set aside an arbitration award if it was rendered in manifest disregard of the law."  *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (cleaned up); *accord Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021).

Importantly, "a petition brought under the FAA is 'not an occasion for *de novo* review of an arbitral award.'"  *Scandinavian*, 668 F.3d at 71 (quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)).  Instead, "arbitration panel determinations are generally accorded great deference under the [FAA]."  *Kolel*

*Beth*, 729 F.3d at 103 (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir.1997)) (alterations in original).  "Consequently, the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable justification for the outcome reached.'"  *Id.* at 103-04 (quoting *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)); *accord D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) ("A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high.") (citation omitted).

"Confirming an arbitration award is much easier."  *Pacelli v. Vane Line Bunkering, Inc.*, 549 F. Supp. 3d 306, 313 (S.D.N.Y. 2021).  "A district court must confirm an arbitration award unless the party seeking vacatur establishes any of the limited exceptions listed in § 10(a) of the FAA."  *Kolel Beth*, 729 F.3d at 104 (citing *Hall St. Assocs. v. Mattel, Inc.,* 552 U.S. 576, 582 (2008)).

## **ARGUMENT**

I.    **The District Court Correctly Held That the Award Should Not Be Vacated, but Rather Confirmed, Because the Arbitrator Did Not Manifestly Disregard the Law.**

Lanteng is incorrect in its primary assertion on appeal, that "[t]he District Court erred in holding that the Arbitrator did not manifestly disregard the law [because] Section 2 of the BSA is an unenforceable penalty clause under

Washington laws (sic), and there is no colorable justification for an alternative interpretation."  App. Br. at 19.

As an initial matter, Lanteng does not argue that the District Court misstated the legal standard applicable to its misguided contention that the Arbitrator's Award somehow manifestly disregarded the law.  To the contrary, Lanteng's brief quotes passages of authority from the Opinion (without attributing its citations to that Opinion).  *Compare* App. Br. at 19-20, *with* SPA-13 (both quoting *Westerbeke Corp. v. Daihatsu Motor Corp.*, 304 F.3d 200, 208 (2d Cir. 2002); *Wallace*, 378 F.3d at 189).  Therefore, as Lanteng concedes, "[a] party seeking to vacate an arbitration award under the manifest disregard standard must show 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'"  App. Br. at 19 (quoting *Westerbeke*, 304 F.3d at 208); *accord Zurich Am. Ins.*, 811 F.3d at 589 ("A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden[.]") (citation omitted).

To that end, "[a]n arbitral award may be vacated for manifest disregard of the law 'only if a reviewing court ... finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'"  *Wallace*, 378 F.3d at 189 (quoting *Banco de Seguros del Estado v.*

*Mut. Marine Off., Inc.*, 344 F.3d 255, 263 (2d Cir. 2003)) (other internal citations and quotation marks omitted). And, as Lanteng itself notes, "[e]ven if a court disagrees with the arbitrator's decision on the merits, 'if there is a barely colorable justification for the outcome,' then the award should be enforced." App. Br. at 20 (quoting *Wallace*, 378 F.3d at 190); *accord Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) ("It is not enough for petitioners to show that the panel committed an error—or even a serious error.") (citations omitted).

Lanteng has not and cannot meet its heavy burden of establishing that the Arbitrator manifestly disregarded the law. As the District Court explained, the undisputed facts in this case establish that "Lanteng's argument that the BSA was unenforceable was thoroughly briefed to the Arbitrator." SPA-13. Further, "[t]he Arbitrator responded to each argument in his Award." *Id.*; SPA-14. And, "[i]n doing so, he pointed to precedential opinions issued by the Supreme Court of Washington State." SPA-13. Therefore, as the District Court correctly concluded, "[t]he Arbitrator did not agree with the position advocated by Lanteng, but it cannot reasonably be claimed that he ignored governing law." *Id*.

Nevertheless, that is specifically what Lanteng argues here. Indeed, Lanteng devotes nine pages of its Brief to its renewed efforts to litigate *de novo* the merits of its claims in Arbitration, maintaining that "well-defined legal principles have clearly shown that BSA Section 2 is not a liquidated damage [*sic*] clause." *See*

App. Br. at 20-29. To that end, Lanteng repeats its arguments already made below that the Arbitrator's Award should be vacated because Lanteng believes that, contrary to the Arbitrator's ruling, "Section 2 of the BSA should be construed as a penalty clause" under Washington law instead of as a liquated damages provision. App. Br. at 22.

Although the Award was well-reasoned and justified, as the District Court correctly noted, "a federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." SPA-14 (quoting *Wallace*, 378 F.3d at 190). Because the record establishes beyond controversy that the Arbitrator's Award set forth more than "a barely colorable justification for the outcome," Second Circuit precedent mandates that Lanteng's contentions fail and that the Award be confirmed. *Wallace*, 378 F.3d at 190 (quoting *Banco de Seguros del Estado*, 344 F.3d at 260).

Lanteng's counsel's inexplicable refusal to acknowledge the practical effect of the law's "extreme deference to arbitrators" and the "very limited" nature of the federal courts' review of their awards is not confined to this case. *Wallace*, 378 F.3d at 189, 190 (citation omitted); *Zurich Am. Ins.*, 811 F.3d at 588. Multiple district courts have entered orders rejecting Lanteng's counsel's serial efforts to appeal *de novo* arbitration awards rejecting their clients' identical arguments regarding the enforceability of Section 2 of the BSA. *See, e.g.*, *Jiakeshu Tech. Ltd.*

29

*v. Amazon.com Servs., LLC*, No. 22-CV-10119 (JGLC), 2024 WL 36999, at *5
(S.D.N.Y. Jan. 3, 2024) ("That Petitioner does not agree with the Arbitrator's
assessment of the record (after citing the very case relied upon by Petitioner) is not
a basis to vacate an arbitration award."); *Shenzhen Zongheng Domain Network Co.
v. Amazon.com Servs. LLC*, No. 23-CV-03334 (JLR), 2023 WL 7327140, at *5
(S.D.N.Y. Nov. 7, 2023) ("[T]he Arbitrator applied the very legal standard pressed
by Petitioner in evaluating whether Section 2 was an unenforceable penalty.");
*Shenzhen Zongheng*, 2023 WL 7327140, at *5 ("As other courts have held in
rejecting the same argument presented here, the Arbitrator's finding regarding the
enforceability of Section 2 of the BSA does not mean that [he] 'manifestly
disregarded the law; it just means that [he] disagreed with the Petitioner's
position.'") (quoting *US Rising Star Inc. v. Amazon.com Servs., LLC*, No. 23 CIV
778 (CM), 2023 WL 6882337, at *3 (S.D.N.Y. Oct. 18, 2023)).

A stubborn refusal to acknowledge the deference federal law affords the
Arbitrator's Award pervades Lanteng's contentions to this Court. For example,
Lanteng next argues—without any citation to authority—that the Arbitrator's
alleged use of "simple sentences" in his Award and its citation to "only one case"
from the Supreme Court of Washington "in its analysis" regarding liquidated
damages somehow constituted a manifest disregard of the law. App. Br. at 27-28
(quoting APP-481 § B) (quoting *Watson*, 881 P.2d at 249); *but see Norton*, 145

F.3d at 117 ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

But the Arbitrator need only have set forth "a barely colorable justification for the outcome," and thus Lanteng's argument fails. *Wallace*, 378 F.3d at 190 (quoting *Banco de Seguros del Estado,* 344 F.3d at 260). It is settled law in this Circuit that "arbitrators are not required to provide an explanation for their decision." *Wallace*, 378 F.3d at 190 (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)).

Similarly specious is Lanteng's "reliance on a few arbitration awards that have reached different conclusions regarding the enforceability of Section 2 of the BSA" which "does not justify vacatur of the award here." *Shenzhen Zongheng*, 2023 WL 7327140, at *6; *accord US Rising Star*, 2023 WL 6882337, at *3 ("What happened in other arbitrations is of absolutely no moment" when a court reviews an arbitration award for manifest disregard of law).

As the District Court concluded, "Lanteng's arguments boil down to a contention that the Arbitrator did not '[get] it right'—but such an error, even if one existed, would not justify vacatur of the award." SPA-14 (quoting *Jock*, 646 F.3d at 124); *see also US Rising Star*, 2023 WL 6882337, at *3 ("Petitioner's argument boils down to an assertion that the arbitrator, in deciding that Section 2 was an enforceable liquidated damages clause and not an improper penalty clause, got the

31

law wrong. Even if Petitioner were correct (and that is an issue I have no business addressing), that error would not justify vacatur of the award.") (citing *Wallace*, 378 F.3d at 190). Accordingly, Lanteng's appeal should be denied, and the District Court's Opinion confirming the Award should be affirmed.

## II. The District Court Correctly Held That the Award Should Not Be Vacated, but Rather Confirmed, Because Lanteng Failed to Establish That Public Policy Would Justify Vacating the Arbitration Award.

Lanteng's public policy arguments fail outright because Lanteng has ignored the District Court's dispositive ruling that because Lanteng did not raise the issue of the BSA allegedly violating public policy as a ground for vacatur until its reply brief, "Lanteng's delay in raising this argument alone warrants its rejection." SPA-17 (citing *Knipe*, 999 F.2d at 711 ("Arguments may not be made for the first time in a reply brief."); *Fisher*, 487 F. Supp. 2d at 278)). Lanteng similarly ignores the District Court's similar ruling that Lanteng could have but did not raise with the Arbitrator its argument that Section 2 of the BSA violates public policy, and therefore "the issue is forfeited" because Lanteng "failed to raise this issue with the Arbitrator" "in the first instance." *Id.* (quoting *Europcar*, 156 F.3d at 315). By failing to address these equally dispositive rulings, Lanteng has conceded the issues, and this Court should reject its spurious public policy arguments on that basis alone. *See, e.g.*, *Norton*, 145 F.3d at 117 ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

32

Lanteng next contends the District Court "misinterpreted" its public policy argument and, therefore, committed legal error by rejecting it.  App. Br. at 29.  But Lanteng is the one that misapprehends the District Court Opinion.  Lanteng identifies no instance of how the District Court interpreted Lanteng's arguments incorrectly.  Lanteng concedes that it "argued that BSA Section 2 [i.e., the contract] violate[s] strong public policy. . . ."  App Br. at 30.  As the District Court's Opinion established, that argument fails: "Important here, this [public policy] exception asks whether enforcement of the award would violate public policy, not whether the underlying contract violates public policy."  SPA-18 n.6 (citing *PB Life & Annuity Co. v. Universal Life Ins. Co.*, No. 20-CV-2284 (LJL), 2020 WL 4369443, at *10 (S.D.N.Y. July 30, 2020); *Europcar*, 156 F.3d at 315). In any event, Lanteng now recognizes that, under the Convention, the narrow public policy exception requires a showing that an award's *enforcement* "would violate our most basic notions of morality and justice."  App. Br. at 30 (quoting *Europcar*, 156 F.3d at 315).  Lanteng makes no attempt to address that standard.

Lanteng heavily relies upon an unpublished, out-of-circuit bankruptcy court decision that does not discuss the public policy of Washington.  *In re Potential Dynamix LLC*, No. 2:11-BK-28944-DPC, 2022 WL 18635242, at *1 (Bankr. D. Ariz. July 18, 2022).  Lanteng discusses at length the bankruptcy court's supposed reasoning that an *entirely different* provision of the BSA, Section 8, is

unenforceable under a six-factor test under Washington law.  App. Br. at 31-33.

But there is no such reasoning in that bankruptcy court decision.  *See id.* at *8.

The Court should also reject Lanteng's specious, three-page argument that
"the enforcement of the arbitral award harms public interest including fair
competition and customer protection."  App. Br. at 35-37.  Lanteng has never
raised these arguments before, and "an argument raised for the first time on appeal
will not be considered."  *Atl. States Legal Found., Inc. v. Whitman*, 14 F. App'x
76, 77 (2d Cir. 2001).  Further, and as Lanteng concedes, any public policy must
be well-defined and dominant as "ascertained by reference to the laws and legal
precedents and not from general considerations of supposed public interests."
Appellant Br. at 30 (quoting *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of
United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766
(1983)).  But general considerations of supposed public interests are all Lanteng
submits here, and its public policy arguments each fail as a matter of law.

## III.   LANTENG'S BRIEF FAILS TO COMPLY WITH THE RULES.

"Federal Rule of Appellate Procedure 28(a)(8)(A) requires that the appellant
cite to the relevant portions of the record on appeal to support his arguments."
*Tchatat v. City of N.Y.*, 795 F. App'x 34, 36 (2d Cir. 2019).  Failure to do so may
result in waiver of the argument.  *See Clark v. John Lamula Investors, Inc.*, 583
F.2d 594, 602 (2d Cir. 1978) ("this court need not search the record to discover

34

whether such error indeed exists" when appellant failed to cite to the record in support of his argument). Yet Lanteng cites to the record only a handful of times in its 39-page Brief. App. Br. at 9, 16, 17, 18, 22 (citing APP-32, APP-88, APP-82, APP-90, APP-84, APP-95, APP-29). And most of those cites have no discernable relation to the cited propositions. Lanteng's failure to comply with this bedrock appellate requirement is sufficient grounds for the Court to find its arguments upon appeal have been waived. *See Clark*, 583 F.2d at 602.

Further, instead of citing to the record of these proceedings, Lanteng relies almost entirely upon links to various websites and articles it believes support its factual contentions. *See, e.g.*, App. Br. at 5 nn.1-2; 6 nn. 3 & 7; 8 nn. 12-13 (citing links to CNN.com, FTC.com, and WSJ.com). Lanteng does not provide the Court with any basis to consider these materials, which are outside the scope of the record on appeal and, therefore, should not be considered. *See Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975) (per curiam) (evidence outside the district court record is considered only in "extraordinary circumstances"); Fed. R. App. P. 10(a) (defining record on appeal).

Lanteng makes one request for the Court to take judicial notice concerning the *Majority Staff Report and Recommendations, House Subcommittee on Antitrust, Commercial and Administrative Law on the Committee of the Judiciary*. App. Br. at 5. However, "[i]f the court takes judicial notice, it does so in order 'to

35

determine *what* statements [they] contained'—but again not for the truth of the matters asserted." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citation and quotation marks omitted). Further, federal courts will not take judicial notice of disputed facts mentioned in a Congressional record. *See, e.g.*, *Kaspersky Lab, Inc. v. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018) (where facts about plaintiffs mentioned in legislative record are in dispute, reviewing court would not take judicial notice of those facts); *Alharbi v. Beck*, 62 F. Supp. 3d 202, 209 (D. Mass. 2014) (same, explaining, "The credibility of such evidence will vary according to the thoroughness and impartiality with which the committee conducted its investigation, the fairness of its procedure, [and] the fullness of opportunity it afforded accused individuals or organizations to develop their side of the story[.]'") (quoting *Stasiukevich v. Nicolls,* 168 F.2d 474, 479 (1st Cir. 1948)).

Nevertheless, Lanteng seeks to use that Report only "for the truth of the matters asserted" with regard to disputed factual issues from the Arbitration. *Id.* (citation omitted); *see also* App. Br. at 6 (citing report for proposition that "[r]etailers have no alternative but to submit to Amazon's business terms because that is where the buyers are"). And that Report is irrelevant to the issues on appeal. *See United States v. Bleznak*, 153 F.3d 16, 21 n.2 (2d Cir. 1998) (declining to judicially notice matters "not relevant to [the] disposition of [the] appeal"). The Court should accordingly deny its request for judicial notice.

36

The upshot of the foregoing is that Lanteng's contentions on appeal are as devoid of factual substantiation as they are legal merit, and the District Court's Opinion should be affirmed.

## <u>CONCLUSION</u>

For the above reasons, Amazon respectfully requests that this Court affirm the District Court's confirmation of the Award and denial of Lanteng's Petition.

Dated:  New York, New York
        May 8, 2024

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _ /s/ John M. Magliery _____
        John M. Magliery

1251 Avenue of the Americas
21st Floor
New York, NY 10020-1104
Tel:  (212) 489-8230
E-mail:  johnmagliery@dwt.com

John A. Goldmark
920 Fifth Avenue
Suite 3300
Seattle, WA 98104-1610
Tel:  (206) 622-3150
E-mail:  johngoldmark@dwt.com

*Of Counsel:*
Arthur Simpson
Theo A. Lesczynski

*Attorneys for Defendants-Appellees*
*Amazon.com, Inc and Amazon.com*
*Services LLC*

38

## <u>CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 8,457 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in the Times New Roman font, size 14.

Dated:   New York, New York
         May 8, 2024

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:  */s/ John M. Magliery*
      John M. Magliery

1251 Avenue of the Americas
21st Floor
New York, NY 10020-1104
Tel:  (212) 489-8230
E-mail:  johnmagliery@dwt.com

*Attorneys for Defendants-Appellees*
*Amazon.com, Inc and Amazon.com*
*Services LLC*